1  Stephen F. Yunker, Esq. (CSB 110159)
2  655 West Broadway, Suite 1400
   San Diego, California 92101
3  Tel:  (619) 233-5560
   Fax:  (619) 233-5535
4  Email:  sfy@yslaw.com

5  ***ATTORNEYS FOR PLAINTIFF
   AND THE PROPOSED CLASS AND
6  SUBCLASS***

7

8

9

10

11

12              **IN THE UNITED STATES DISTRICT COURT**
13          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

14
   KATHRYN FRANCE BUTLER,
15 on behalf of herself and all others        **Case No.:**  '17CV2158 JLS  KSC
   similarly situated,
16                                            **CLASS ACTION COMPLAINT FOR:**
                              Plaintiff,
17                                            (1) Negligence
                   vs.                        (2) Violation of California's Data
18                                                Breach Law (Cal Civ. Code §§
   EQUIFAX, INC., a Georgia                       1798.80 *et seq.*) and
19 corporation,                               (3) Violation of California's Unfair
                                                  Competition Law (Cal. Bus. & Prof.
20                            Defendant.          Code §§ 17200, *et seq.*).
                                              (4) Constructive Fraud
21

22                                            **DEMAND FOR JURY TRIAL**

23

24

25

26

27

28

Plaintiff Kathryn France Butler ("Plaintiff"), individually and on behalf of the general public and all other similarly situated (the "Class Members"), by and through her undersigned counsel, upon personal knowledge as to facts pertaining to her and on information and belief as to all other matters, brings this action against Equifax, Inc. ("Equifax" or "Defendant"), and states the following:

## NATURE OF THE CASE

1.     On September 7, 2017, Equifax announced to the general public for the first time that it experienced an enormous data breach involving some of the most sensitive and private personal information of approximately 143 million Americans (the "Breach").    According to Equifax, "[c]riminals exploited a U.S. website application vulnerability to gain access to certain files"

2.     Equifax stated that the unauthorized access occurred from mid-May through July 2017, and that the impacted information included names, Social Security numbers, birth dates, addresses, driver's license numbers, credit card numbers and certain dispute documents with personal identifying information (the "Personal Data").

3.     Equifax is one of the three major credit reporting agencies involved in the business of maintaining sensitive and private personal information of consumers worldwide.    Although Equifax is historically associated with consumer credit reporting, it has expanded its services to include credit monitoring and identity theft protection for consumers, along with human resource services.    According to Equifax, it "organizes, assimilates and analyzes data on more than 820 million consumers and more than 91 million businesses worldwide[.]"

4.     Equifax collects and maintains personal and sensitive information about consumers, including Plaintiff and other Class Members.    It obtains private information from the aforementioned services it provides, as well as from credit card companies, banks, credit unions, retailers, lenders, among other sources that provide private information to Equifax.

1

5.      Equifax then disseminates this information, including credit scores, histories, and lending risk analyses to those lenders, retailers, and other entities.  This information helps determine an individual's creditworthiness, affecting their ability to qualify for loans, housing and even jobs.

6.      Plaintiff and Class Members expect, believe, and rely upon those expectations and beliefs that Equifax will implement proper security measures to protect their Personal Data.  Equifax also affirmatively informs consumers that it will protect their Personal Data.  According to Equifax, it has "built our reputation on our commitment to deliver reliable information to our customers (both businesses and consumers) and to protect the privacy and confidentiality of personal information about consumers. We also protect the sensitive information we have about businesses. Safeguarding the privacy and security of information, both online and offline, is a top priority for Equifax."

7.      Equifax promises consumers that it is "committed to protecting the security of your information through procedures and technology" and that Equifax is "committed to protecting the security of your personal information and use technical, administrative and physical security measures that comply with applicable federal and state laws."

8.      However, despite such promises, Equifax's security measures were grossly deficient and below industry standards, leading to the Breach and Equifax's inability to discover the Breach for nearly three months.

9.      As a result of the promises it made to consumers, Equifax owed a duty at all times to Plaintiff and Class Members to maintain adequate security measures to secure and protect the Personal Data stored on its network and within its databases. By failing to maintain adequate security measures, allowing criminals to get past firewalls and access data that should have been encrypted, and by maintaining Plaintiff's and Class Members' Personal Data on inadequate networks, Equifax breached that duty.

10.     Equifax was at all times aware that its security measures were inadequate prior to the Breach, yet failed to protect the Personal Data.  Prior to the Breach, Equifax's networks were hacked on numerous occasions.  Despite prior hacks, Equifax failed to take reasonable measures to protect the Personal Data and failed to warn Plaintiff and other Class Members that their Personal Data was unjustly susceptible to unlawful access.  Instead, Equifax continued to promise consumers that it was using appropriate industry-standard protocols to protect their Personal Data.

11.     As a proximate and direct result of Equifax's inadequate security, the Breach occurred and Plaintiff and Class Members' Personal Data was compromised, impacted, and stolen, placing them as considerable risk of fraud and identity theft, and causing pecuniary harm associated with paying for credit monitoring services, replacing compromised credit, and having to undertake other measures to protect against future fraud and identity theft resulting from the Breach.

12.     Plaintiff brings this action on behalf of herself and all other persons whose Personal Data was disclosed as a result of the data breach first disclosed by Equifax on September 7, 2017.

13.     Plaintiff seeks on behalf of herself and Class Members injunctive relief, actual and other economic damages, consequential damages, nominal damages or statutory damages, punitive damages, attorneys' fees and costs.

## JURISDICTION AND VENUE

14.     This Honorable Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. 1332(d), because this is a class action involving more than 100 Class Members, the amount in controversy exceeds $5 million exclusive of interest and costs, and many members of the Class, including Plaintiff, are citizens of different states than Defendant.

15.     This Court has personal jurisdiction over Equifax because Equifax is authorized to conduct business in California, and does in fact conduct business in California. Equifax therefore has sufficient minimum contacts with the state to render

3

exercise of jurisdiction by this Court in compliance with traditional notions of fair play and substantial justice.

16.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Equifax regularly conducts business in this district, unlawful acts or omissions are alleged to have occurred in this district, and Equifax is subject to personal jurisdiction in this district.

## PARTIES

17.    Plaintiff Kathryn France Butler is an individual and resident of Oceanside, San Diego County, California.    On information and belief, Plaintiff provided Equifax with access to her Personal Data in connection with loan and other credit applications.    After learning about the Breach, Plaintiff visited www.equifaxsecurity2017.com to check if her Personal Data had been impacted as a result of the Breach.  After entering her last name and the last six digits of her Social Security number, Plaintiff received confirmation stating her information "may have been impacted" by the Breach.

18.    Prior to visiting www.equifaxsecurity2017.com, Plaintiff received no direct notice by U.S. mail, email or otherwise from Equifax notifying her that her Personal Data was impacted by the Breach, nor has Equifax told Plaintiff which of her Personal Data was taken.

19.    After being told that her Personal Data may have been stolen and compromised, Plaintiff investigated Equifax's TrustedID Premier credit monitoring service.  However, after learning that enrolling in such service could serve as a waiver of her rights to participate in litigation against Equifax and force all claims to arbitration, Plaintiff chose not to enroll.

20.    Plaintiff's Personal Data has been compromised and stolen as a result of the Breach and Equifax's unlawful conduct alleged herein.  As a direct and proximate result of Equifax's wrongful acts and omissions, the resulting Breach, and the resulting identity theft and fraud inflicted on Plaintiff by unauthorized criminal

parties, Plaintiff as suffered and will continue to suffer economic damages and other forms of injury and harm, including a loss of value to her Personal Data, for which there is an established market.  Equifax knew or should have known that Personal Data is valuable to consumers, and knew or should have known that as a result of its inadequate security measures and resulting Breach, that Plaintiff and Class Members' Personal Data would be sold without authorization and without any monetary benefit incurred by Plaintiff or Class Members.

21.    As a direct and proximate result of Equifax's wrongful acts and omissions, the resulting Breach, and the resulting identity theft and fraud inflicted by unauthorized criminals, Plaintiff and suffered and will continue to suffer other economic damages and harm, including but not limited to:

      a.  Imminent, immediate, and continuing risk of identity theft and fraud;

      b.  Invasion of privacy;

      c.  Breach of the confidentiality of certain Personal Data;

      d.  Deprivation of the value in her Personal Data; and/or

      e.  Financial costs associate with credit monitoring, account monitoring, and damage mitigation.

22.    Defendant Equifax is incorporated in Georgia with its headquarters and principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

## CLASSWIDE ALLEGATIONS

23.    The United States Government Accountability Office stated in a June 2007 report on Data Breaches ("GAO Report") that identity thieves use sensitive personal information such as Social Security numbers to open financial accounts, receive government benefits and incur charges and credit in a person's name.[1]

---

[1] *See* http://www.gao.gov/new.items/d07737.pdf.

Class Action Complaint;
Case No.:

24.    The identity theft discussed in the GAO Report is harmful because consumers may not learn of the theft until their credit rating is impacted, and it will require time and expense to remediate the damage, specifically that consumers will face "substantial costs and inconveniences repairing damage to their credit records."

25.    When unauthorized third parties access an individual's sensitive personal information, they are able to carry out a wide variety of bad acts and crimes, such as obtaining a driver's license, obtaining government benefits, and/or filing fraudulent tax returns.

26.    "[Personal Data], which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets."[2] It is so valuable to identity thieves that once [Personal Data] has been disclosed, criminals often trade it on the "cyber black-market" for several years. Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Personal Data has considerable market value.

27.    Because Personal Data is so valuable, identity thieves have posted sensitive personal information on various websites, thereby making it publicly available for acquisition by buyers.

28.    Therefore, any company, including Equifax, who transacts business with a consumer and then compromises the privacy of his or her Personal Data has deprived that person of the full monetary value of the consumer's transaction with the company.

---

[2] *See* John T. Soma, *et al.*, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) (citations omitted).

29.    It is within this framework that Plaintiff, Class Members, and approximately 143 million Americans must now live in, with the knowledge that their Personal Data is out of reach and stolen by unauthorized third parties who will use it for improper purposes, including making such information available on the black market.

30.    On September 7, 2017 Equifax announced to the general public for the first time that the Breach occurred, and was perpetrated by criminals who gained access to files storing sensitive Personal Data for approximately 143 million Americans, including names, Social Security numbers, birth dates, addresses, driver's license numbers, credit card numbers, and other data.

31.    According to Equifax, the hackers had access to the Personal Data between mid-May 2017 until July 29, 2017, when the Breach was discovered.

32.    According to Equifax, the breach was due to its own error, specifically a vulnerability in a web application for its U.S. website.

33.    While Equifax learned of the breach on July 29, 2017, it waited over a month before informing the general public.  As of the date of this Complaint, Plaintiff and Class Members affected by the Breach still have not been personally notified by Equifax.

34.    Equifax failed to develop, implement, and maintain a comprehensive information security program with administrative, technical, and physical safeguards that were appropriate to its size and complexity, the nature and scope of its activities, and the sensitivity of any customer information at issue.  *See* Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. §6801.

35.    Equifax's aforementioned failures include, but are not limited to:

  a.  Failure to create, implement, and maintain adequate data security practices to protect Plaintiff and Class Members' Personal Data;

  b.  Failing to detect the Breach in a timely manner; and

  c.  Failing to disclose that its data security protocol was inadequate, fell below industry standards, and could not protect Plaintiff and Class Members' Personal Data.

7

36.    Equifax also failed to develop and implement a proper risk response program to address the Breach and other incidents of unauthorized access to Personal Data.  This includes, but is not limited to, Equifax's failure to notify the Plaintiff and Class Members that their Personal Data had been placed at risk or stolen.

37.    Equifax's belated disclosure to the general public about the Breach were misleading, incomplete, and failed to provide Plaintiff and Class Members with salient information about the scope of Personal Data stolen.

38.    Equifax's September 7, 2017 press release disclosing the Breach is misleading and failed to disclose to consumers, including Plaintiff and Class Members, the breadth of the threat to their Personal Data e.g. despite stating that names, Social Security numbers, birth dates, addresses, driver's license numbers, credit card numbers and dispute documents containing personal identifying information were accessed, the release states "No Evidence of Unauthorized Access to Core Consumer or Commercial Credit Reporting Databases."

39.    Equifax's Breach notice places the burden on Plaintiff and Class Members to protect themselves and mitigate any damages and harm, not Equifax.  Equifax instructed its customers to review their account statements, monitor their credit reports, and obtain fraud alerts: "please monitor your account statements and report any unauthorized charges to your credit card companies and financial institutions" and "remain vigilant for incidents of fraud and identity theft by reviewing account statements and monitoring your credit reports."

40.    Equifax's notice states that Equifax will provide one year of credit monitoring and identity theft protection to U.S. consumers through TrustedID Premier.  However, the offering is inadequate and requires consumers to spend

8

additional time and resources.  Furthermore, Equifax is requiring consumers to enroll in the TrustedID Premier program at a later date and is requiring consumers who enroll to agree to a mandatory arbitration provision and class action waiver.

41.    Furthermore, the limited one-year offer does not include monitoring the online black market for identity theft and, therefore, is insufficient.

42.    Equifax's notice also states that consumers may want to place a "fraud alert" or a "freeze" on their credit reports.

43.    However, Equifax fails to disclose that a fraud alert may not prevent the unauthorized misuse of existing accounts, and also fails to disclose that a credit freeze requires a fee.  Therefore, anytime a consumer wants to permit an entity to check his or her credit, it will cost money to lift the freeze. Additionally, if an identity thief has already used data to open accounts, then a credit freeze will provide no benefit, and a credit freeze does not prevent identity thieves from altering existing accounts.

44.    Equifax advertises itself as a leader in data security and promotes the importance of data breach prevention, and specifically targets consumers for data protection services, including credit monitoring and identity theft protection.

45.    Equifax describes itself as a "global information solutions company that uses **trusted** unique data, innovative analytics, technology and industry expertise to power organizations and individuals around the world by transforming knowledge into insights that help make more informed business and personal decisions."[3]

---

[3] *See* http://www.equifax.com/about-equifax/company-profile/

9

46.    Equifax says that it "develop[s], maintain[s] and enhance[s] secured proprietary information databases through the compilation of consumer specific data, including credit, income, employment, asset, liquidity, net worth and spending activity, and business data, including credit and business demographics, that we obtain from a variety of sources, such as credit granting institutions, income and tax information primarily from large to mid-sized companies in the U.S., and survey-based marketing information. We process this information utilizing our proprietary information management systems. We also provide information, technology and services to support debt collections and recovery management."[4]

47.    Equifax further states that "We also offer a portfolio of products that enable individual consumers to manage their financial affairs and **protect their identity**."[5]

48.    Although Equifax knew or should have known about the weaknesses of its website applications and failure to implement internal mechanisms to detect a breach, Equifax continued to promise to consumers, including Plaintiff and Class Members, that their Personal Data was safe.

49.    Equifax is absolutely aware of the dangers of identity theft, and has stated "[i]dentity theft is committed when someone steals your personal information – such as your name, Social Security number, and date of birth – typically to hijack your credit and use it to open up new credit accounts, take out loans in your name, or access your bank or retirement accounts. An identity

---

[4] Equifax 10-K For the Fiscal Year Ended December 31, 2016, https://otp.tools.investis.com/clients/us/equifax/SEC/sec-show.aspx?Type=html&FilingId=11875154&Cik=0000033185

[5] *Id.* (emphasis added)

thief can even use your personal information to steal your tax refunds, seek medical services, or commit crimes in your name."[6]

50.    Equifax has affirmatively acknowledged the dangers of identity theft, and has conceded that as a result of identity theft, unauthorized users can:

a. Open new credit card accounts with your name, Social Security number and date of birth. When the thief charges to the credit cards and leaves the bills unpaid, the delinquency will be reported to your credit report and could impact your credit score;

b. Open a bank account in your name and write bad checks on the account;

c. Create counterfeit checks or debit cards and use them to drain your existing bank accounts;

d. File for bankruptcy under your name to avoid paying debts;

e. Set up a phone, wireless, or other utility service in your name.

51.    Equifax has continuously recognized the risks of identity theft and the emotional toll it can take on its victims.[7]

52.    At all times relevant hereto, Equifax created and implemented its security policies which ultimately failed to comport with industry standards with regard to data protection.

53.    Plaintiff and Class Members relied on Equifax to keep their Personal Data safe and confidential.

---

[6] *See* https://www.equifax.com/personal/education/identity-theft/what-isidentity-Theft.

[7] *See*                          http://www.equifax.com/pdfs/corp/EFS-714-ADV_Predictive_Model_Fraud_WP_72409.pdf;                          and https://www.equifax.com/assets/PSOL/15-9814_psol_emotionalToll_wp.pdf;

Class Action Complaint;
Case No.:

54.    Equifax's wrongful acts and omissions, and its breach of the ordinary standard of care in failing to protect Plaintiff and Class Members' Personal Data, and its failure to adequately notify Plaintiff and Class Members about the breach, was arbitrary, capricious, and in wanton derogation of Equifax's duties to Plaintiff and Class Members.

## CLASS ALLEGATIONS

55.    Plaintiff brings this class action on behalf of herself and all other members of a class of nationwide consumers (the "Nationwide Class") defined as follows:

> All persons in the United States whose personal or financial information was compromised as a result of the data breach first disclosed by Equifax on or about September 7, 2017.

56.    Plaintiff brings this class action on behalf of herself and all other members of a class of California consumers (the "California Class") as defined as follows:

> All persons in California whose personal or financial information was compromised as a result of the data breach first disclosed by Equifax on or about September 7, 2017.

57.    The Nationwide Class and California Class are collectively referred to as the "Classes."

58.    Excluded from the Classes are: (1) Equifax and its officers, directors, employees, principals, affiliated entities, controlling entities, agents, and other affiliates; (2) the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact, or assignees of such persons or entities described herein; and (3) the Judge(s) assigned to this case and any members of their immediate families.

59.    While Plaintiff is currently unaware of the precise number of Class Members, Equifax has admitted that the Personal Data of approximately 143 million Americans was taken during the Breach. Plaintiff therefore believes

12

that the Classes are so numerous that joinder of all members would be impractical.

60.    Plaintiff's claims are typical of the claims of the Classes.  Plaintiff and the Class members were injured by the same wrongful acts and omissions as described herein.  Plaintiff's claims therefore arise from the same practices, course of conduct, wrongful acts and omissions that give rise to the claims of all Class Members.

61.    Common questions of law and fact exist as to all Class Members and predominate over any individual questions.  Such common questions of law and fact include, but are not limited to:

    a.  Whether Equifax engaged in unlawful, unfair or fraudulent acts or practices;

    b.  Whether Equifax engaged in the wrongful conduct alleged herein;

    c.  Whether Equifax utilized reasonable and/or industry standard measures to protect the Personal Data of Plaintiff and Class Members;

    d.  Whether Equifax adequately or properly maintained its network to protect Personal Data of Plaintiff and Class Members;

    e.  Whether Equifax adequately or properly encrypted Personal Data of Plaintiff and Class Members as necessary to effectuate its security protocols;

    f.  Whether Equifax knew or should have known prior to the Breach that its network and systems were at risk of a potential data breach;

    g.  Whether Equifax should have notified Plaintiff and Class Members that it failed to use reasonable, industry-standard practices to protect their Personal Data;

    h.  Whether Equifax should have notified Plaintiff and Class Members that their Personal Data was at risk of imminent and unauthorized disclosure;

    i.  Whether Equifax intentionally failed to disclose material information regarding its security protocols, the imminent risk of a data breach, and the Breach itself;

    j.  Whether Equifax's acts, omissions, and nondisclosures were intended to deceive Plaintiff and Class Members;

    k.  Whether Equifax's conduct violated the law;

13

l. Whether Plaintiff and Class Members are entitled to restitution, disgorgement, and other equitable relief this Honorable Court may deem appropriate; and,

m. Whether Plaintiff and Class Members are entitled to recover actual damages, statutory damages, punitive damages, attorneys' fees and costs, and any other measure of damage that this Honorable Court may deem appropriate.

62.     Plaintiff will fairly and adequately protect the interests of all Class Members.  Plaintiff is an adequate representative of the Classes in that she has no interests which are adverse to or in conflict with those of the Class Members she seeks to represent.   Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

63.     A class action is superior to any other available method for the fair and efficient adjudication of this controversy since individual joinder of all Class Members is impractical. Furthermore, the expenses and burden of individual litigation would make it difficult or impossible for the individual members of the Classes to redress the wrongs done to them, especially given that the damages or injuries suffered by each individual member of the Classes may be relatively small. Even if the Class Members could afford individualized litigation, the cost to the court system would be substantial and individual actions would also present the potential for inconsistent or contradictory judgments. By contrast, a class action presents fewer management difficulties and provides the benefits of single adjudication and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Negligence**

64.     Plaintiff incorporates by reference all preceding paragraphs as if more fully set forth herein.

14

65.     During its normal course of business, Equifax collected the Personal Data of millions of consumers, including Plaintiff and Class Members. As a result of Equifax's admissions that data security and the risk of identity theft are important considerations for consumers, and the fact it has suffered past data breaches, including: a) May 2016 involving its W-2 Express website resulting in the leak of Personal Data from 430,000 persons; b) a breach occurring between April 17, 2016 and March 29, 2017 related to customers' employee tax records, c) a breach announced in January 2017 in which credit information of customers at LifeLock had been exposed, and d) a breach disclosed to the Attorney General of New Hampshire in May 2014, along with other security alerts involving the fraudulent and criminal use of Personal Data it acquired, it was reasonably foreseeable to Equifax that unauthorized persons would attempt to breach its security systems and acquire such Personal Data.

66.     Accordingly, Equifax, which is entrusted with the Personal Data of over 800 million consumers and 88 million businesses worldwide, was trusted by its customers and other consumers including Plaintiff and Class Members that it would properly protect their Personal Data.  Equifax has a special relationship with Plaintiff and Class Members and, in turn, a special duty to exercise reasonable care to protect and secure the Personal Data so as to prevent its unlawful and unauthorized acquisition and use.

67.     Equifax should have known to take appropriate measures to protect the Personal Data.

68.     Equifax likewise had a duty to exercise reasonable care under the circumstances to prevent any breach of security that would result in the loss, disclosure or compromise of the Personal Data Plaintiff and the Class, given its prior knowledge of security breaches.

15

Class Action Complaint;
Case No.:

69.    Equifax also possessed a duty to exercise reasonable care under the circumstances to swiftly detect any breach of security that would result in the loss, disclosure, compromise, and/or theft of Plaintiff and Class Members' Personal Data.

70.    Once the Breach was detected, Equifax had a duty to exercise reasonable care under the circumstances to notify affected persons including Plaintiff and Class Members in order to minimize potential damage due to the loss, disclosure, compromise and/or theft of Personal Data.

71.    Equifax breached its duties by failing to adequately protect Plaintiff and Class Members' Personal Data from loss, disclosure, compromise, and/or theft by unauthorized third parties.

72.    Plaintiff and Class Members' Personal Data was transferred, sold, opened, viewed, mined and otherwise released, disclosed, and disseminated without authorization as the direct and proximate cause of Equifax's failure to create, implement, and maintain its processes, controls, policies, and protocols for complying with applicable laws and comporting with industry standards for protecting Plaintiff and Class Members' Personal Data.

73.    The policy of preventing future harm further weighs in favor of finding a special relationship between Equifax and the Classes.  Consumers rely on Equifax to keep Personal Data safe.  If Equifax is not held accountable for failing to create, implement, and maintain proper industry-standard security measures, they will not take the steps necessary to protect consumers against future breaches.

74.    Because of the aforementioned breaches suffered by Equifax, it was reasonably foreseeable that if it did not take reasonable precautions, the Personal Data of Plaintiff and Class Members would be misappropriated.

75.    Major credit reporting agencies like Equifax face a higher threat of security breaches than other types and sizes of businesses due in part to the scope and breadth of the personal, private, and sensitive information that Equifax possesses about hundreds of millions of consumers.

76.    As a direct and proximate result of Equifax's wrongful, unlawful acts and omissions, and breach of its duties of care, Plaintiff and Class Members have suffered and will continue to suffer economic damages and other injuries and harms in the form of: (i) an imminent, immediate and the continuing increased risk of identity theft and identity fraud, (ii) invasion of privacy, (iii) breach of the confidentiality of their Personal Data, (iv) deprivation of the value of their Personal Data, for which there is a well-established market, (v) failure to receive the full benefit of their bargain as a result of receiving credit fraud and monitoring services that were less valuable than what they paid for, and/or (vi) the financial and/or temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

77.    Neither Plaintiff nor Class Members contributed to the Breach, nor did they contribute to Equifax's decision to employ insufficient and below-standard security to protect the Personal Data.

78.    Plaintiff and Class Members seek compensatory and punitive damages with interest, the costs of suit and attorneys' fees, and any further relief that this Honorable Court deems appropriate.

79.    Equifax's above-described unlawful, wrongful acts and omissions and failure to carry out its duties with reasonable care directly and proximately caused the Breach and constitute common law negligence.

## SECOND CAUSE OF ACTION
**Violations of the California Data Breach Act, California Civil Code §§ 1798.80, *et seq*.**

80.    Plaintiff incorporates by reference all preceding paragraphs as if more fully set forth herein.

81.    "[T]o ensure that personal information about California residents is protected," the California Legislature enacted the Customer Records Act (the "California CRA"), Civil Code §1798.81.5, which requires that any business that "owns licenses, or maintains personal information about a California resident shall

17

implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

82. The events alleged herein constituted a "breach of the security system" of Equifax within the meaning of Civil Code §1798.82.

83. The information lost, disclosed, or intercepted during the events alleged herein constituted unencrypted "personal information" within the meaning of Civil Code §§1798.80(e) and 1798.82(h).

84. Equifax failed to implement and maintain reasonable or appropriate security procedures and practices to protect consumers' personal and financial information. On information and belief, Equifax failed to employ security measures that comport with industry standards, best practices or safeguards with respect to consumers' Personal Data.

85. Equifax failed to disclose the breach of security of its system in the most expedient time possible and without unreasonable delay after it knew or reasonably believed that consumers' personal information had been compromised.

86. The breach of the personal information of millions of Equifax's consumers' records constituted a "breach of the security system" of Equifax pursuant to Civil Code §1798.82(g).

87. By failing to implement reasonable measures to protect consumers' personal data it maintained, Equifax violated Civil Code §1798.81.5.

88. In addition, by failing to promptly notify all affected consumers that their personal information had been acquired (or was reasonably believed to have been acquired) by unauthorized persons in the data breach, Equifax violated Civil Code §1798.82 of the same title in a manner that would reach all affected consumers.

89. By violating Civil Code §§1798.81.5 and 1798.82, Equifax "may be enjoined" under Civil Code §1798.84(e).

90. Accordingly, Plaintiff requests that the Court enter an injunction requiring Equifax to implement and maintain reasonable security procedures to protect consumers' data in compliance with the California Customer Records Act, including, but not limited to: (1) ordering that Equifax, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis; (2) ordering that Equifax engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (3) ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures; (4) ordering that Equifax, consistent with industry standards, conduct regular database scanning and security checks; (5) ordering that Equifax, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and (6) ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

91. Plaintiff further requests that the Court require Equifax to: (1) identify and notify all members of the Class who have not yet been informed of the data breach; and (2) to notify affected customers of any future data breaches by email and text within 24 hours of Equifax's discovery of a breach or possible breach, and by mail within 72 hours.

92. As a result of Equifax's violation of Civil Code §§1798.81, 1798.81.5, and 1798.82, Plaintiff and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft and identity fraud, (ii) invasion of privacy, (iii) breach of the confidentiality of their Personal Data,

19

1  (iv) deprivation of the value of their Personal Data, for which there is a well-

2  established market, (v) failure to receive the full benefit of their bargain as a result of

3  receiving credit fraud and monitoring services that were less valuable than what they

4  paid for, and/or (vi) the financial and/or temporal cost of monitoring their credit,

5  monitoring their financial accounts, and mitigating their damages.

6       93.    Plaintiff, individually and on behalf of the members of the Class, seeks

7  all remedies available under Civil Code §1798.84, including, but not limited to: (a)

8  damages suffered by members of the Class; and (b) equitable relief. Plaintiff,

9  individually and on behalf of the members of the Class, also seeks reasonable

10  attorneys' fees and costs under applicable law.

11  **THIRD CAUSE OF ACTION**
**Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200,**
12  ***et seq.***

13       94.    Plaintiff incorporates by reference all preceding paragraphs as if more

14  fully set forth herein.

15       95.    The California Unfair Competition Law, Bus. & Prof. Code §17200, *et*

16  *seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or

17  practice and any false or misleading advertising, as those terms are defined by the

18  UCL and relevant case law. By virtue of its above-described wrongful actions,

19  inaction, omissions, and want of ordinary care that directly and proximately caused

20  the Breach, Equifax engaged in unlawful, unfair and fraudulent practices within the

21  meaning, and in violation of, the UCL.

22       96.    In the course of conducting its business, Equifax committed "unlawful"

23  business practices by knowingly failing to create, maintain, implement, and audit

24  appropriate data security processes, policies, procedures, protocols, and software and

25  hardware systems to safeguard and protect Plaintiff and Class Members' Personal

26  Data, and violating the statutory and common law alleged herein in the process,

27  including, *inter alia*, California's Customer Records Act (Civ. Code §1798.80, *et*

28  *seq.*), California's UCL, the Gramm-Leach-Bliley Act, and common law negligence.

20

Plaintiff and Class members reserve the right to allege other violations of law by Equifax constituting other unlawful business acts or practices. Equifax's above-described wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

97.    Equifax also violated the UCL by failing to timely notify Plaintiff and Class Members regarding the unauthorized release and disclosure of their Personal Data.

98.    Equifax's above-described unlawful, wrongful acts, omissions, failure to act in accordance with reasonable and ordinary standards of care, misrepresentations, practices, and non-disclosures also constitute "unfair" business acts and practices in violation of the UCL in that Equifax's wrongful conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. California has a well-defined public policy embodied by various states statutes, including California's Customer Records Act and Information Practices Act to ensure that businesses that maintain customer's personal information implement and maintain reasonable security procedures and practices to protect the personal information from unauthorized access, destruction, use, modification or disclosure. The gravity of Equifax's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Equifax's legitimate business interests other than engaging in the above-described wrongful conduct.

99.    The UCL also prohibits any "fraudulent business act or practice." Equifax's above-described claims, nondisclosures and misleading statements were false, misleading and likely to deceive the consuming public in violation of the UCL.

100.    As a direct and proximate result of Equifax's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violations of the UCL, Plaintiff and Class members have suffered (and will continue to suffer) economic damages and other injury and

21

actual harm in the form of *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft and identity fraud, (ii) invasion of privacy, (iii) breach of the confidentiality of their Personal Data, (iv) deprivation of the value of their Personal Data, for which there is a well-established market, (v) failure to receive the full benefit of their bargain as a result of receiving credit fraud and monitoring services that were less valuable than what they paid for, and/or (vi) the financial and/or temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

101.  Unless restrained and enjoined, Equifax will continue to engage in the above-described wrongful conduct and more data breaches will occur. Plaintiff, therefore, on behalf of herself, Class Members, and the general public, also seeks restitution and an injunction prohibiting Equifax from continuing such wrongful conduct, and requiring Equifax to modify its corporate culture and design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures protocols, and software and hardware systems to safeguard and protect the PII entrusted to it, as well as all other relief the Court deems appropriate, consistent with Bus. & Prof. Code §17203.

**FOURTH CAUSE OF ACTION**
**Constructive Fraud**

102.  Plaintiff incorporates by reference all preceding paragraphs as if more fully set forth herein.

103.  Equifax owed a duty to Plaintiff and Class Members to adequately protect their Personal Data under various state and federal laws and regulations by virtue of being a consumer reporting agency.

104.  As a consumer reporting agency to whom Plaintiff's and Class Members' most intimate, sensitive and private personal information and Personal Data was provided, Equifax enjoyed a special relationship of trust and confidence with Plaintiff

22

and Class Members and owed them a heightened duty above and beyond normal commercial relations. Accordingly, Plaintiff and Class Members reasonably expected Equifax would adhere to its obligations to adequately protect the sensitive, personal information they provided including the Personal Data Equifax allowed to be stolen.

105.   Equifax breached this duty by failing to maintain security adequate to protect Plaintiff and Class Members' Personal Data, and by failing to timely and adequately notify them of the breach.

106.   As a result of Equifax's conduct, Plaintiff and Class Members are entitled to damages and equitable relief.

## DEMAND FOR JURY TRIAL

107.   Plaintiff hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and consumers similarly situated, prays for judgment as follows:

A.   An Order certifying the proposed Classes defined herein, designating Plaintiff as representative of said Classes, and appointing the undersigned counsel as Class Counsel;

B.   For restitution of all amounts obtained by Equifax as a result of its wrongful conduct in an amount according to proof at trial, plus prejudgment and post-judgment interest thereon;

C.   For all recoverable compensatory, consequential, actual, and/or statutory damages in the maximum amount permitted by law;

D.   For punitive and exemplary damages;

E.   For other equitable relief;

F.   For such injunctive relief, declaratory relief, orders, or judgment as necessary and appropriate to prevent these acts and practices;

G.   For payment of attorneys' fees and costs as allowable by law; and

H.   For all such other relief as this Honorable Court deems appropriate.

23

1

2

3  DATED: October 20, 2017                    Respectfully Submitted,

4                                            /s/Stephen F. Yunker

5                                            Stephen F. Yunker, Esq. (CSB 110159)
                                             655 West Broadway, Suite 1400
6                                            San Diego, California 92101
                                             Tel:  (619) 233-5560
7                                            Fax:  (619) 233-5535
8                                            Email:  sfy@yslaw.com

9                                            **ATTORNEYS FOR PLAINTIFF**
                                             **AND THE PROPOSED CLASS AND**
10                                           **SUBCLASS**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint;
Case No.: